cal______

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ANGEL VILLALOBOS,

Petitioner,

v.

ROBERT HERNANDEZ, Warden,

Respondent.

Civil No.09cv363 L(AJB)

**REPORT AND RECOMMENDATION DENYING RESPONDENT'S MOTION TO DISMISS**

[Doc. No. 31.]

Petitioner Angel Villalobos (hereinafter "Petitioner"), a state prisoner proceeding *pro se* and *in forma pauperis*, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. On September 3, 2010, Respondent filed a renewed motion to dismiss the petition for writ of habeas corpus. Petitioner filed an opposition on September 15, 2010. An evidentiary hearing was held on October 15 and 19, 2010 to determine whether Petitioner is entitled to equitable tolling. This Court has reviewed the petition for writ of habeas corpus, Respondent's renewed motion to dismiss, Petitioner's opposition, the testimony at the evidentiary hearing, post-evidentiary hearing briefs and all supporting documents. After a thorough review, this Court concludes the Petitioner is entitled to equitable tolling and **RECOMMENDS** that Respondent's motion to dismiss be **DENIED**.

**Background**

On September 22, 2004, Petitioner was convicted by a jury of two counts of attempted premeditated murder and two counts of mayhem in violation of California Penal Code sections 664,

187(a), 189, 203. (Lodgment 1 at 121-28.) The jury also determined that Petitioner personally used a knife in the commission of the crimes and that he personally inflicted great bodily injury during the commission of the attempted murders in violation of California Penal Code sections 12022(b)(1), 12022.7(a), 1192.7(c)(23) and 1192.7(c)(8). (Id. at 7-10, 121-28.) On April 7, 2005, the trial court sentenced Petitioner to serve an indeterminate term of life in state prison plus a consecutive determinate term of four years. (Id. at 95-97, 133.) On June 9, 2006, the California Court of Appeal affirmed the judgment of conviction. (Lodgment 6.) The California Supreme Court denied the petition for direct review on August 23, 2006. (Lodgment 8.)

On February 25, 2007[1], Petitioner filed a petition for writ of habeas corpus in the San Diego Superior Court. (Lodgment 9.) On April 6, 2007, the San Diego Superior Court denied the petition for writ of habeas corpus. (Lodgment 10.) On June 25, 2007, Petitioner filed a petition for writ of habeas corpus with the Court of Appeal which was denied on August 30, 2007. (Lodgment 11, 12.) On October 29, 2007, Petitioner filed a petition for writ of habeas corpus before the California Supreme Court. (Lodgment 13.) The California Supreme Court denied the petition on April 23, 2008. (Lodgment 14.)

Petitioner filed the instant petition in this Court on February 17, 2009. On May 27, 2009, Respondent filed a motion to dismiss. Petitioner filed an opposition on September 1, 2009. On November 12, 2009, the Court issued a report and recommendation granting Respondent's motion to dismiss as untimely. The Court concluded that Petitioner was not entitled to equitable tolling. On February 11, 2010, the District Judge issued an Order Remanding the Report and Recommendation for Evidentiary Hearing to develop the record as to whether Petitioner is entitled to equitable tolling. On August 24, 2010, in response to a Motion to continue the hearing, the Court issued an order denying the motion to dismiss without prejudice to the Respondent refiling. On September 3, 2010, following the Court's order, Respondent filed a renewed motion to dismiss. On September 15, 2010, Petitioner filed an opposition. The Court held an evidentiary hearing on October 15 and 19, 2010. On November 16, 2010,

---

[1]Petitioner is entitled to the benefit of the "mailbox rule," which provides that petitions are deemed filed upon delivery to prison officials. See Houston v. Lack, 487 U.S. 266, 276 (1988); Huizar v. Carey, 273 F.3d 1220, 223 (9th Cir. 2001) (application of Houston's mailbox rule to federal habeas filings); see also Stillman v. LaMarque, 319 F.3d 1199, 1202 (9th Cir. 2003) (recognizing same with regard to state habeas petitions). Here, the state habeas was signed on February 25, 2007, and this Court will therefore construe the Petition as having been filed on that date.

Petitioner filed a post-hearing brief, Respondent filed a post-hearing brief on December 10, 2010 and on December 16, 2010, Petitioner filed a reply to Respondent's post-hearing brief. The matter now comes before this Court on report and recommendation on the issue of equitable tolling.

## Discussion

### A. Statute of Limitations

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides for a one-year limitations period for state prisoners to file a federal habeas petition in federal court. See 28 U.S.C. § 2244(d). The AEDPA's one-year statute of limitations begins to run on "the date on which judgment became final by the conclusion of direct review or the expiration of the time for seeking such review . . . ." Id. § 2244(d)(1)(A). The period of "direct review," pursuant to § 2244(d)(1)(A), includes the ninety (90) day period within which Petitioner could have filed a petition for a writ of certiorari before the United States Supreme Court. Bowen v. Roe, 188 F.3d 1157, 1158-59 (9th Cir. 1999). Therefore, the one year statute of limitations begins to run ninety days after direct review is denied by the California Supreme Court. Id.

Here, the California Supreme Court denied review on August 23, 2006. The ninety day period to seek a petition for writ of certiorari before the United States Supreme Court expired on November 21, 2006. Therefore, the one year statute of limitation began to run on November 22, 2006. The federal petition in this Court was not filed until February 17, 2009.

The statute of limitations may be statutorily or equitably tolled for particular periods of time. Petitioner is entitled to statutory tolling during the period of time a petitioner seeks post-conviction relief in state court. 28 U.S.C. § 2244(d)(2). Tolling begins "from the time the first state habeas petition is filed until the California Supreme Court rejects the petitioner's final collateral challenge" but the statute of limitations is not tolled "from the time a final decision is issued on direct state appeal and the time the first state collateral challenge is filed because there is no case 'pending' during that interval." Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999).

Here, ninety-six days elapsed between November 21, 2006, when the judgment became final, and February 25, 2007, when Petitioner filed a habeas petition in state court. On April 23, 2008, the California Supreme Court denied the petition for writ of habeas corpus and the statute of limitations

began to run again. Petitioner did not file his petition in this Court until February 17, 2009. Therefore, 300 days passed after the California Supreme Court denied the petition and before he filed his federal petition. In all, with statutory tolling, 396 days passed on the statute of limitations. Petitioner filed his federal habeas petition 31 days past the statute of limitations deadline.

Petitioner may also be entitled to equitable tolling. On February 11, 2010, the district judge remanded the matter back to this Court to hold an evidentiary hearing on whether Petitioner is entitled to equitable tolling during two time periods: Period 1, from November 21, 2006, when the state court judgment became final to the filing of the first petition for writ of habeas corpus in state court on February 25, 2007; and Period 2, from April 23, 2008, when the California Supreme Court denied the petition for writ of habeas corpus to February 17, 2009, when Petitioner filed the petition in this Court.

**B.     Equitable Tolling**

Equitable tolling applies to AEDPA's one-year statute of limitations. See Mendoza v. Carey, 449 F.3d 1065, 1068 (9th Cir. 2006). Plaintiff bears the burden of showing that equitable tolling applies and must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Raspberry v. Garcia, 448 F.3d 1150, 1153 (9th Cir. 2006) (citing Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). "The threshold necessary to trigger equitable tolling under the AEDPA is very high, lest the exceptions swallow the rule. This high bar is necessary to effectuate the AEDPA's statutory purpose of encouraging prompt filings in federal court in order to protect the federal system from being forced to hear stale claims." Mendoza, 449 F.3d at 1068.

    **1.     Period One: November 21, 2006 to February 25, 2007**

      **a.     Extraordinary Circumstance**

During Period One, Petitioner argues that his lack of English proficiency individually or in combination with the unusual circumstance of conversion of state prison facilities at California State Prison, Los Angeles County ("LAC") and R.J. Donovan Correctional Facility ("Donovan") created an extraordinary obstacle to Petitioner's ability to file his petition timely. Specifically, the conversion of prison facilities restricted Petitioner's access to the law library and to his personal property, which

included legal case materials.[2] Respondent opposes arguing that he had the effective assistance of a fellow inmate during and well beyond the entire duration of Period One. In addition, Petitioner and Arthur Henderson, Petitioner's inmate assistant, were not denied access to the law library and the alleged legal materials necessary to prepare the petition were not even needed or used when the state habeas petition was filed.

**i. English Proficiency**

Petitioner argues that his lack of English proficiency was an extraordinary circumstance that prevented him from timely filing his petition. Respondent argues that during Period One, Petitioner had the assistance of a fellow inmate, Arthur Henderson, who drafted all of Petitioner's state habeas petitions.

The language limitations of an inmate, by itself, do not justify equitable tolling because the existence of translators who can assist a petitioner during the appellate process renders equitable tolling inapplicable. See Mendoza, 449 F.3d at 1069-70 (citing Cobas v. Burgess, 306 F.3d 441, 444 (6th Cir. 2002)). In coming to its holding, the Mendoza court adopted the reasoning in Cobas v. Burgess, 306 F.3d 441, 444 (6th Cir. 2002) which held that the existence of a translator who aids the petitioner "during his appellate proceedings" negates a petitioner's claim that he had reasonable cause for remaining ignorant of AEDPA's requirements. Mendoza, 449 F.3d at 1070 n. 4 (citing Cobas, 306 F.3d at 444). Equitable tolling may be justified if language barriers actually prevent timely filing. Id. at 1069.

At the hearing, Petitioner testified that he obtained the services of Arthur Henderson, a fellow inmate, who assists other inmates in preparing legal materials. (1 Hearing Transcript ("HT") 9; Pet's Ex. List, No. 6 ¶ 1.) In a declaration filed by Henderson, in October 2006, he agreed to work on Petitioner's

[2] Petitioner argues that in Respondent's renewed motion to dismiss, he failed to raise any arguments in his motion relating to Period One so any argument relating to Period One should be disregarded. However, on October 24, 2010, the Court issued an order denying the amended motion to dismiss without prejudice and set another briefing schedule upon the filing of a renewed motion to dismiss. In its order, the Court stated that the renewed motion to dismiss shall incorporate by reference all the documents in the Court's docket. (Dkt. No. 30.) Although Respondent did not specifically incorporate by reference all the documents in the Court's docket, the Court intended all documents to be incorporated by reference when it filed its order and will accept Respondent's arguments as to Period One.

state and federal habeas petitions.[3] (Pet's Ex. List, No. 5 ¶ 3.) Henderson worked on the petitions before the start of the statute of limitation, from at least October 2006 through November 2007 when Henderson was transferred to another prison. (Id., No. 6 ¶ 3.) During that time period, Henderson wrote all three of Petitioner's state habeas petitions in the state Superior Court, the Court of Appeal and the California Supreme Court in 2007. (Id., No. 6 ¶ 3; 1 HT 11-12; Lodgments 9, 11, 13.) Petitioner stated he relied on Henderson to do everything except to make copies and sign the petitions. (1 HT 27, 29.) In addition, Petitioner testified that he did not make requests for Spanish language materials at the prison until the middle of 2008, because in 2007, Petitioner relied entirely on Henderson to help him out. (1 HT 36.) During the prison conversion, Petitioner continued to rely on Henderson to handle his petitions in state court. (1 HT 59-61.) Even though Henderson only spoke English, Petitioner was able to communicate with Henderson through other inmates who were bilingual. (1 HT 9; Pet. Ex. List, No. 6 ¶ 2.)

Although Mendoza does not address procuring the assistance of an English-only speaking assistant, it would appear that Petitioner's language barriers at this time period did not prevent him from filing his state habeas petition. Therefore, since Petitioner had the assistance of a English-only inmate assistant during Period One from November 21, 2006 to February 25, 2007, his lack of English proficiency was not an extraordinary circumstance that actually prevented Petitioner from timely filing his petition. See Mendoza, 449 F.3d at 1070.

Petitioner further contends that utilizing Henderson did not adequately remedy the language impediment because Henderson had only limited Spanish and Petitioner was not provided with translation to facilitate his own research. Prior to the post-hearing briefing, Petitioner, in his papers and at the evidentiary hearing, never stated or argued that he wanted to do his own research during this time period. Plaintiff testified that he relied entirely on Henderson during Period One and beyond. Therefore, Petitioner's argument that the extraordinary circumstance of Petitioner's lack of English proficiency was not remedied because Henderson spoke limited Spanish is unavailing.

---

[3] The date when Henderson started helping Petitioner is not clear. At the hearing, Petitioner testified that Henderson agreed to help him after the court of appeal affirmed his conviction and the court appointed attorney stopped helping him which was in June 2006. (1 HT 9.) Petitioner incorrectly stated that it was in the middle of 2005. (1 HT 9.) Petitioner also testified that Henderson filed a petition for review in the California Supreme Court on July 17, 2006. (1 HT 22.) Later, Petitioner testified that Henderson began helping in August 2006. (1 HT 37.) It is apparent that Henderson began assisting Petitioner prior to October 2006.

**ii. Law Library Access**

Petitioner argues that there was an unusual restriction on library access during the conversion which was an extraordinary circumstance that prevented the timely filing of his petition. In addition, Petitioner argues that since Henderson was a complete substitute in preparing the state habeas petition, the impediments Henderson encountered must be vicariously applied to Petitioner. Respondent asserts that Petitioner and Henderson had reasonable access to the library during this time.

In November 2006 until early 2007, the LAC, Facility C was being converted from a Level IV Sensitive Needs Yard to a Reception Center. (Pet. Ex. List, No. 19.) As a result, the majority of the affected LAC population was relocated to Donovan. (Id.) Donovan had to reorganize and Facility 3 was being converted from Level III general population to a Level IV sensitive needs facility. (Respt. Ex. 6, Ex. A.) Petitioner and Henderson were both special needs inmates that were transferred from LAC to Donovan. (Pet. Ex. List, No. 5 ¶ 6.)

At the hearing, Petitioner testified that he was not denied any privileges during the transfer and the move did not affect his daily life before he was actually transferred. (1 HT 32.) When he was initially transferred to Donovan, Petitioner states that the librarians would visit the cells every fifteen days and provide materials that an inmate had requested. (1 HT 33.) He states that he was not allowed access to legal books until about June or July 2007 and was only limited to receiving forms until that time. (1 HT 34-35.) However, Petitioner stated that he did not make any requests for Spanish legal books in 2007 because he relied entirely on Henderson. (1 HT 36.) During the conversion, Petitioner's only difficulty with trying to file his petition was the delay in making court copies of his petitions because he had to file a request to have someone pick up the copies and it took a few days to complete. (1 HT 33-34.) Petitioner also testified that he did not delay the filing because he could not access legal materials from the library but because he was waiting on medical records to attach to the state habeas petition. (1 HT 37.)

According to Henderson, sometime in October 2006 or shortly thereafter, the law library at Lancaster closed down and a paging system was implemented about 30 days later. (Pet. Ex. List, No. 6 ¶ 4.) In addition, he asserts that all the books were replaced with computers. (Id.) He states that he accessed the law library four to five times during the three months before the transfer, but he was

impeded because of his unfamiliarity with the computers. (Id.) In another declaration, Henderson states that the law library was closed to prepare for the conversion and some weeks later a small temporary library was opened in a former classroom. (Pet. Ex. List, No. 5 ¶ 4.) In between, a paging system was implemented that allowed inmates to get copies of specific cases. (Id. ¶ 5.) Henderson states that he was impeded because he had no physical access to the law books because he had to name specific cases in advance to obtain copies and there were limited books in the temporary library. (Id.)

On January 1 or 2, 2006, Petitioner and Henderson were transferred to Donovan and placed in lockdown during the transfer. (Pet. Ex. List, No. 5 ¶ 6.) At Donovan, the library was also using the paging system and remained in place for the first few weeks after the transfer. (Id. ¶ 7.) A temporary library was set up in a hobby room but it lacked books and had no computers. (Id.) In addition, in order to copy court papers, Henderson had to leave the materials with the librarian and the copies would be provided at a later date. (Id.) He states that access to library staff was limited because he had to make a request for a personal interview and wait for a response. (Id.)

Henderson further states that after the transfer to Donovan, he did not have access to the library for about eight weeks and nobody staffed the satellite library for about eight to ten weeks after the transfer. (Pet. Ex. List, No. 6 ¶ 5.) He states that it took two to three weeks to get a response regarding a request to get addresses of the Superior Court and the district attorney's office. (Id. ¶ 6.) In addition, he states that Librarian Sterling was not assigned to Facility 3 until eight to ten weeks after the transfer so the inmates had no live assistance during that time. (Id. ¶ 8.)

Kathleen Sterling, who was a library technical assistant at Donovan during Period One, testified at the hearing. (2 HT 146.) She was told she would be responsible for preparing, developing, implementing and operating the Facility Three library, a satellite library, in December 2006 due to the pending transfer of sensitive needs inmate from LAC. (2 HT 147-48.) The central library was only open to minimum security inmates and other general population security. (2 HT 148.)

The satellite library opened on February 27, 2007. (2 HT 148.) She testified that from January 1 - February 27, 2007, the prisoners had access to legal materials through the paging system. (2 HT 150.) The inmates filled out a personal interview request form to request legal materials and forms, handed them to the floor officer to be placed in the inter-institution prison mail system or gave them to her if she

was at the housing unit. (2 HT 150-51.) In order to get legal materials, the inmates needed to write the exact citation. (2 HT 178.) If the whole citation was not listed, she would ask the inmate for more information. (2 HT 178.) If the inmates needed copies, the inmates would be given a trust withdrawal form. (2 HT 150.) As for copies, Sterling said she returned copies to the inmates within three days because that was the policy. (2 HT 151-52.) The inter-institution mail took from two days to two weeks to receive. (2 HT 153.) Sterling was not aware of the inter-institution mail ever taking three to four weeks during January 2007 to February 2009. (2 HT 154.) Once she received a request in writing, she would provide the case to the inmate within a couple of days. (2 HT 156.) She testified that in January and February 2007, it never took more than two weeks to get materials to the inmates. (2 HT 157.)

Petitioner admitted that he had no need to access the law library, except to make copies or sign the petitions, because he relied entirely on Henderson during Period One. Although some of the testimony at the hearing are conflicting regarding library access as to Henderson, he was not denied access to the law library. Henderson stated that he visited the law library at LAC four to five times shortly before the transfer. It was only because he was not familiar with the computers that he had problems. (Pet. Ex. List, No. 6 ¶ 4.) After the transfer, although more time consuming, Henderson was able to access the library through the paging system. Librarian Sterling testified that it usually took a few days to respond to a request for legal materials but no more than two weeks. (2 HT 157.) Although Henderson claims he had problems because he did not know the specific citation to a case, he does not state what specific legal issue he needed assistance on. In addition, Petitioner filed his state habeas petition on February 25, 2007, two days before the satellite library opened. Therefore, the delays in the paging system and the fact that there was no physical library until the end of February did not prevent the actual filing of his petition. In fact, both Petitioner and Henderson state that they delayed the filing of the state court petition not because of library access but because they were waiting on requested medical records. (1 HT 37; Pet. Ex. List, No. 6 ¶ 9.) Henderson was able to file his petition in state court on February 25, 2007 despite the fact that he did not have access to a specific citation to a case and during the time when the satellite library had not yet opened. Therefore, the lack or even restricted library access due to the prison conversion was not an extraordinary circumstance that actually prevented the timely filing of Petitioner's petition. See Mendoza, 449 F.3d at 1070.

**iii. Legal Property**

Petitioner contends that lack of access to his personal legal property was an extraordinary circumstance that prevented the timely filing of his state habeas petition. Respondent argues that the legal materials allegedly necessary to prepare the state habeas petition were not needed or even used when the petition was filed.

According to Petitioner, Henderson returned Petitioner's legal materials about two weeks before the transfer. (1 HT 63.) Then, prison officials took Petitioner's property about a week before the transfer. (1 HT 59-60.) Petitioner testified that he got his property back about three or four weeks after he arrived. (1 HT 59.)

Henderson states that he did not receive Petitioner's legal property for about seven weeks after the transfer. (Pet. Ex. List, No. 6 ¶ 7.) Those legal papers included mental health records; case law pulled for his case; other legal self-help materials; and the trial transcripts from his case. (Id.) Henderson requested mental health records informally and through a Form 602 but a response to the 602 took 30 days.[4] (Id.) Henderson also states that he did not obtain access to Petitioner's legal materials until after the Superior Court denied the petition which was on April 6, 2007. (Id.) Henderson asserts that he delayed filing the state habeas petition because he was hoping to get access to the mental health records but never got them. (Id. ¶ 9.) Henderson ended up filing the petition without the medical records because he was concerned about the statute of limitations. (Id.)

In Lott v. Mueller, 304 F.3d 918 (9th Cir. 2002), the petitioner filed his federal petition past the statute of limitations deadline by seven days. Id. at 921. Petitioner was a claimant and a witness in an unrelated civil matter and was temporarily transferred to another prison to facilitate his court appearance. Id. at 921. He was transferred twice for a total of eighty-two days. Id. While at the other facility, he did not have access to legal materials related to his federal habeas petition. Id. at 921. The court held that the combination that the petitioner was denied access to his filed during two temporary transfers that lasted 82 days and at that time, there were questions about the proper tolling method under AEDPA satisfied the "extraordinary circumstance" standard for equitable tolling. Id. at 924.

---

[4]The Court notes that the 602 Form requesting mental health records was not submitted until April 26, 2007. (Resp's Ex., No. 9.)

In Espinoza- Matthews v. California, 432 F.3d 1021 (9th Cir. 2005), three days before the California Supreme Court denied the petitioner's petition for writ of habeas corpus, petitioner was placed in administrative segregation for about eleven months for his safety after he had been assaulted and slashed by another inmate. Id. at 1023. Despite his diligence in repeated requests for his legal property, Petitioner was denied access to his property until after he was released from administrative segregation. Id. at 1027. After his release, he only had slightly over a month to prepare a petition with his legal papers. Id. at 1028. His petition was 24 days late. Id. at 1026. The court held that he was entitled to equitable tolling. Id. at 1028.

Based on the record, it is not clear when Petitioner received his legal property. At the hearing, Petitioner testified that he received his property three to four weeks after arriving at Donovan. It was also shown that Petitioner received his non-legal property, a hot pot, a TV and a TIMEX band on January 10, 2007. (Pet. Ex. List, No. 12.) On the other hand, Henderson states that he did not receive Petitioner's legal property until seven weeks after the transfer and in another statement, Henderson asserts that he did not receive Petitioner's legal property until after the Superior Court denied the habeas petition in April 2007. (Pet. Ex. List., No. 6 ¶ 7.) Notwithstanding when Petitioner's legal property was returned, Petitioner was able to file his state habeas petition without the legal property which included his medical records. Therefore, the withholding of Petitioner's legal property did not prevent the actual filing of his petition in state court and is not an extraordinary circumstance justifying equitable tolling. See Mendoza, 449 F.3d at 1070.

In addition, the alleged extraordinary circumstance of lack of access to his legal property ended on February 25, 2007 when the state habeas petition was filed and statutory tolling began. At that time, Petitioner had about ten months remaining on the statute of limitations. In Allen v. Lewis, the Ninth Circuit explained that it will more difficult for a prisoner to show an extraordinary circumstance caused his delay in filing if the extraordinary circumstance occurs in the beginning or middle of the limitations period than when he encounters them at the end of the limitations period. Allen v. Lewis, 255 F.3d 798, 800 (9th Cir. 2001). Since the petitioner lacked access to his legal papers for twenty-seven days when he was transferred between state prisons early on in the statute of limitations, he still had ten months left to file his petition after the extraordinary circumstance ended and was not entitled to equitable tolling. Id. at

801. Similarly, in this case, Petitioner was without his legal property for at most two months which occurred early during the running of the statute of limitations. When statutory tolling began on February 25, 2007 and the alleged extraordinary circumstance ended, Petitioner was still left with 300 days to timely file his petition in this court. See Fisher v. Johnson, 174 F.3d 710, 715-16 (5th Cir. 1999) (holding that after extraordinary circumstance ended, petitioner had 322 days to complete his petition which was more than enough time to file the petition).

In conclusion, Petitioner's impediment in filing a habeas petition because of his lack of English proficiency is belied by the fact that Petitioner relied entirely on Henderson to draft his state habeas petitions. Petitioner's lack of English ability was not an extraordinary circumstance that prevented the actual filing of his state habeas petition in Period One. In addition, Petitioner and Henderson's restricted access to the library and their lack of access to Petitioner's personal legal files are not extraordinary circumstances that prevented Petitioner from filing his state habeas petition. Further, the combination of Petitioner's lack of English language proficiency, lack of access to the law library and lack of access to personal legal property are not extraordinary circumstances that entitle Petitioner to equitable tolling. Therefore, because Petitioner has failed to show an extraordinary circumstance during Period One, he is not entitled to equitable tolling.

**2.      Period 2:  April 23, 2008 to February 17, 2009**

**a.      Extraordinary Circumstance**

Petitioner argues that his lack of English proficiency and the absence of any Spanish-language materials at the library are extraordinary circumstances that entitle him to equitable tolling. Respondent asserts that Petitioner has failed to establish that his language ability was a barrier to filing a timely petition during Period Two.

In Mendoza, the Court held that the combination of the prison law library's lack of Spanish language legal materials and petitioner's inability to obtain translation assistance before the limitations deadline could constitute extraordinary circumstances to warrant equitable tolling. Id. at 1069. The court concluded that at a minimum, Petitioner must show that "he was unable, despite diligent efforts, to procure either legal materials in his own language or translation assistance from an inmate, library personnel or other source" during the relevant time period. Id. at 1970.

In Mendoza, the court did not question the petitioner's lack of proficiency in English because there was no indication that the petitioner could communicate in English. Mendoza, 449 F. 3d at 1070 n. 4. Mendoza stated that a petitioner "who demonstrates proficiency in English . . . would be barred from equitable relief. Id. at 1970 (citations omitted). Other courts in the Ninth Circuit have not defined what it means is to be "proficient" in English for purposes of equitable tolling. The Oxford English Dictionary defines "proficient" as "[s]killed, adept, competent; expert in a particular field." Oxford English Dictionary, www.oed.com (2010).

Several unpublished cases address the English language ability of a petitioner as it relates to equitable tolling, but in these case, the petitioners demonstrated level of English is more extensive than Petitioner in this case. See e.g., Cruz v. Evans, No. 07-3113, 2009 WL 363622 at 2 (C.D. Cal. 2009) (the court held that petitioner was not entitled to equitable tolling on petitioner's alleged limited English abilities because records demonstrated he was born in the United States; completed the eleventh grade; conducted police interviews in English; and achieved an above ninth grade level score in reading on test of basic adult education administered at the prison); Medina v. Cramer, No. S-06-2534, 2008 WL 4133840 at 2 (E.D. Cal. 2008) (petitioner was not entitled to equitable tolling because an interview with the police was conducted entirely in English; and while petitioner had an interpreter at the trial, the trial judge denied the motion to exclude the statement to the police on the basis of petitioner's limited understanding of English; he came to the United States at 17 and held several jobs where he spoke English at some jobs; and was exposed to English in his daily life); Silva v. Oregon, No. 03-6358, 2009 WL 4505445 at 2 (D. Or. 2009) (petitioner was not entitled to equitable tolling because there was evidence that petitioner could communicate in English because he wrote letters to his attorney and requests to prison officials in English; filed legal documents in state and federal court in English; and was deposed in English with no need for an interpreter).

Petitioner testified that he came to the United States from Honduras in 2000 when he was 24 years old. (1 HT 8.) He states he did not have any formal training in English until he went to prison. (Pet. Ex. List, No. 3 ¶¶ 3-4.) He was convicted and sent to prison in 2005 and he began taking GED course in March 2007. (Id. ¶ 4.) He states he was unable to read legal books and cases, and write any pleadings in English. (Id. ¶¶ 5-6.) He asserts that he has always had the assistance of other inmates in

preparing all his filings with the courts and never personally wrote any filings for the courts except for signing the filings. (Id. ¶ 6.) He communicates with prison staff and other officials in Spanish or he had the assistance of an inmate. (Id. ¶ 7.) He had a Spanish language interpreter during his criminal trial. (Id. ¶8.)

Jean Noella Schembri testified at the evidentiary hearing. She taught Adult Basic Education One and Two classes at Donovan from 2007-2009 and Petitioner was one of her students. (1 HT 68.) She stated that Petitioner "was one of the most outstanding students I ever taught in my 22 years at Donovan." (1 HT 69.) She noted his eagerness to learn. (1 HT 70.) Petitioner started the program in March 2007. (Pet. Ex. List, No. 23.) There were quarterly tests and report cards documenting his progress. The two ways to evaluate an inmate's progress was the use of the Test of Adult Based Education ("TABE")[5] and the Education Progress Reports. (1 HT 70-71.) In March 2007, Petitioner started out with a reading score of 2.5 (which represents second grade, fifth month of that year) and a vocabulary score of 2.9 (second grade, ninth month of that year). (1 HT 75; Pet. Ex. List, No. 23, AGO 302.) His language arts skill was 2.0 and language mechanics was 1.6. (Pet. Ex. List, No. 23, AGO 302.)

By June 2008, Petitioner was performing at pre-GED levels and became an assistant teacher's aid to Ms. Schembri. (1 HT 78.) He tutored students on the computer, and worked with students, Spanish and non-Spanish speaking, individually in the classroom. (1 HT 78-79.) She stated that his understanding was better than his speaking skills. (1 HT 83.)

In March 2008, right before Period Two, Petitioner's TABE reading score was 8.7. (Pet. Ex. List, No. 22, AGO 287.) In the Education Progress Report dated March 2008, Petitioner's reading score was an 8.7; vocabulary was 5.7, language was 7.7 and language mechanics was 8.8. (Pet. Ex. List., No. 23, AGO 305.) In September 2008, Petitioner's reading score dropped to 5.9, vocabulary was 6.4, language was 7.5, and language mechanics was 12.9. (Pet. Ex. List, No. 23, AGO 307.)

[5]Test of Adult Base Education ("TABE") is a timed, multiple choice, norm-referenced test designed to measure students' achievement of basic skills in reading, language, mathematics and spelling. Hooker v. Adams, 2008 WL 2788404 (E.D.Cal. 2008). The TABE has a maximum achievable score of 12.9 which represents college-level achievement. Id.

Here, the record shows that Petitioner has limited English skills and is not proficient in English. Although his reading, vocabulary, language and language mechanics abilities improved dramatically in one year on standardized tests, there has been no other showing of Petitioner's level of English proficiency. Petitioner had an interpreter at his criminal trial and he utilized the services of an inmate assistant to help with all his filings since his conviction. First, he had a court appointed attorney, then he utilized Henderson from mid-late 2006 through 2007 and then Murillo, occasionally in 2008 and then again in early 2009. He also used Murillo for help in writing letters to the warden and foreign consulates in 2008. Petitioner speaks to prison staff in Spanish or has an inmate interpreter. There has been no indication of Petitioner's practical use of English. Based on the record in this case, Petitioner's level of English proficiency does not rise to the level of "expert" or "skilled" or the level of the petitioners in other unpublished Ninth Circuit cases. See Cruz v. Evans, No. 07-3113, 2009 WL 363622 at 2 (C.D. Cal. 2009); Medina v. Cramer, No. S-06-2534, 2008 WL 4133840 at 2 (E.D. Cal. 2008); Silva v. Oregon, No. 03-6358, 2009 WL 4505445 at 2 (D. Or. 2009). Accordingly, the Court concludes that Petitioner is not proficient in English as it relates to equitable tolling.

At the hearing, Sterling testified that she does not remember the library having any Spanish legal books at the main library or the satellite library. (1 HT 182.) Petitioner wrote that the law libraries do not have any Spanish-language materials. (Pet. Ex. List, No. 3 ¶ 9.) Henderson also states that there were no books in Spanish at the Donovan library. (Pet. Ex. List, No. 6 ¶ 6.) Ramon Murillo wrote that there were no legal books or forms in Spanish. (Pet. Ex. List, No. 2 ¶ 3.) It is not disputed that there are no Spanish language legal materials at Donovan.

Since the Court concludes that Petitioner's English language ability does not rise to the level of being "proficient" and the library lacked Spanish language legal materials, the Court looks at Petitioner's ability to obtain translation assistance and his diligence in trying to obtain these services during Period Two.

**b. Diligence**

Petitioner contends that he exercised diligence to find a bilingual assistant. Respondent argues that although Petitioner made efforts to find assistance during the running of the limitations period, he was not diligent in finding someone while the statute of limitations was statutorily tolled from November

2007, when Henderson was transferred, to April 23, 2008, when the state court denied the petition. In addition, Respondent argues he was not diligent in trying to obtain the federal petition form in English and failed to draft the petition himself.

Petitioner began looking for someone to work on his petition about a month after Henderson left in November 2007. (1 HT 48.) He stated that he was looking for someone who spoke English and Spanish and knew about the law. (1 HT 49.) He said he asked everyone around him and found two to four people who did not charge a fee and who fit the description he was looking for. (1 HT 49-50.) He also asked a nephew for money to pay for an inmate assistant that charged but his nephew was unable to help. (1 HT 50-51.) Petitioner approached Murillo in June or July 2008. (1 HT 54-55.) At that time, Murillo said he was too busy because he had a lot of work to do. (1 HT 55.) From then on, Petitioner would repeatedly ask Murillo for assistance whenever he saw him. (1 HT 56.) In 2008, Murillo occasionally assisted Petitioner with writing letters to the Honduras and Mexican consulate and the warden of Donovan requesting Spanish language books and forms. (Pet. Ex. List., No. 2 ¶ 6; No. 1.) Sometimes, he helped translate for Petitioner at the library. (1 HT 56.) Petitioner stated he asked six or seven people (1 HT 56.) Petitioner testified that Murillo finally agreed to help in February 2009. (1 HT 57-58.) Murillo states that he finally agreed to help in January 2009. (1 HT 42-43.)

Murillo testified but his testimony raises credibility issues because of conflicting facts.[6] Murillo stated that Petitioner started asking him for help in 2008. (2 HT 125.) He refused until late 2008 and early 2009 but he did not begin work on his petition until 2009. (2 HT 128.) Then when he was finished in January, he had problems getting copies through the satellite library. (2 HT 129.) Murillo said he had to wait a month before the copies were done. (2 HT 129.) He said he received part of Petitioner's legal papers at the end of 2008 and reviewed some of it, but then got all the material and agreed to help him in January 2009. (2 HT 135.) He completed the petition within a two-week period. (2 HT 135.)

Respondent's arguments are not persuasive. Respondent has not provided legal authority holding that the diligence to find a bilingual assistant applies when the limitations period is being tolled. In

[6]Murillo testified that he was a library clerk for the Facility Three satellite library and assisted Librarian Sterling. (2 HT 116.) He also testified that the satellite library opened in June 2007 (2 HT 119.) However, Librarian Sterling testified that she knew Murillo and stated that he was never an inmate clerk at the satellite library. (2 HT 149-50.) In addition, the satellite library opened in February 2007. (2 HT 148.)

addition, the Court concluded that Petitioner's English language skills were not proficient so he was not required to show that he was diligent by attempting to draft a federal habeas petition form. When Henderson left in November 2007, Petitioner started looking for a replacement one month later. He said he asked everyone around him and was able to locate and found two to four people but was unable to use them for different reasons. When he discovered and asked Murillo, he repeatedly asked Murillo again and again for assistance, but Murillo declined. During the middle of 2008, Petitioner also submitted requests for Spanish language materials to the warden, and to foreign consulates. The Court concludes that Petitioner exercised reasonable diligence in trying to find a bilingual legal assistance to pursue the filing of his federal habeas petition.

Based on the above, the Court concludes that Petitioner has shown that the combination of the prison law library's lack of Spanish language legal materials and Petitioner's inability to obtain the translation services of inmate Murillo until January 2009 were extraordinary circumstances justifying equitable tolling. Accordingly, Petitioner is entitled to equitable tolling during Period Two from April 23, 2008 to January 2009. Since Petitioner filed his federal petition 31 days late, Petitioner has timely filed his petition in this Court. Accordingly, the Court RECOMMENDS that the motion to dismiss for failing to comply with the statute of limitations be DENIED.

**C. Statutory Tolling Under 28 U.S.C. § 2244(d)(1)(B)**

Petitioner argues that he may be subject to statutory tolling under 28 U.S.C. § 2244(d)(1)(B). Respondent opposes. Since the Court concludes that Petitioner is entitled to equitable tolling, the Court need not address whether statutory tolling under 28 U.S.C. § 2244(d)(1)(B) applies.

## Conclusion

Based on the foregoing, the undersigned Magistrate Judge recommends that Respondent's motion to dismiss be **DENIED.** This report and recommendation is submitted by the undersigned Magistrate Judge to the United States District Judge assigned to this case, pursuant to the provisions of Title 28, United States Code, section 636(b)(1).

**IT IS ORDERED** that no later than **March 4, 2011**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **March 18, 2011**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

DATED: February 1, 2011

Hon. Anthony J. Battaglia
U.S. Magistrate Judge
United States District Court